## BOARD OF EDUCATION OF THE INDEPENDENT SCHOOL DISTRICT OF THE CITY OF HURON,
Appellant, v. WHISMAN, Treasurer of School District of City of Huron, et al., Respondents.

(229 N. W. 522.)

(File No. 6677. Opinion filed February 21, 1930.)

476

*Null & Royhl,* and *W. C. Peterson,* all of Huron, for Appellant.

*Gardner & Churchill,* of Huron, for Respondents.

CAMPBELL, J. Plaintiff's amended complaint reads as follows:

"Now comes the plaintiff by way of Amended Complaint and for cause of action against the defendants and each of them, states, complains and alleges:

"I. That the plaintiff at the times hereinafter mentioned was and still is a public corporation, organized and existing under and by virtue of the laws of the State of South Dakota.

"II. That at the regular school election held in said city of Huron, Beadle County, South Dakota, on June 19th, 1923, the defendant H. M. Whisman, was duly elected to the office of Treasurer of the Independent School District of the city of Huron, Beadle County, South Dakota, for a period of three (3) years from the 1st day of July, 1923.

"III. That on or about September 26th, 1923, the said H. M. Whisman, as principal, and the defendants Geo. W. Wright, J. P. Stahl, Ed. J. Miller, E. D. Sutton and O. E. Wright, as sureties, made, executed and delivered to the Huron Independent School District of the City of Huron, Beadle County, South Dakota, their certain bond or obligation in writing, of which a copy is attached hereto and made a part of this complaint and marked Exhibit 'A.'

"IV. That on the 26th day of September, 1923, the said bond was duly approved by A. A. Chamberlain, as Chairman of the

Board of Education, of the Independent School District of the city of Huron, Beadle Co., So. Dak., and the said bond was duly filed for record in the office of the County Auditor of the County of Beadle, State of South Dakota, on the 26th day of December, A. D., 1923. That said defendant H. M. Whisman, took the oath of office as Treasurer of Huron Independent School District on September 26th, 1923, which oath of office was filed in the office of the County Auditor of Beadle County, South Dakota, on December 26th, 1923, and upon the execution thereof and upon the execution of the bond aforesaid, entered upon the duties of his said office and continued to exercise the same until the present time and still continues so to act.

"V. That said defendant H. M. Whisman, between the 1st day of July, 1923, and the 28th day of January, 1924, and while said bond was in full force and effect and liable thereunder and therefore, received various sums of money as such Treasurer, amounting in the aggregate, and unexpended for any purpose on the 28th day of January, 1924, the sum of Fifty-Three Thousand Four Hundred Seventy-three and 38/100 ($53,473.38) Dollars.

"VI. That said defendant H. M. Whisman, deposited the funds coming into his hands as such Treasurer in the First National Bank of Huron, South Dakota. That said First National Bank of Huron, South Dakota, had not been designated as a depositary of such funds. That said First National Bank of Huron, South Dakota, closed on or about January 28th, 1924, and then and there became and ever since has been and now is insolvent.

"VII. That subsequent to the 28th day of January, 1924, the said Independent School District of the City of Huron, Beadle County, South Dakota, by and through its Board of Education and right and proper officers thereof, drew warrants on the general funds of said District in the hands of said Treasurer H. M. Whisman, but the said H. M. Whisman, wholly failed, refused and neglected to use and exhaust the moneys in his hands as such Treasurer, then in said general funds of said School District, and does now fail, refuse and neglect to meet such warrants to the extent of such moneys in his hands.

"VIII. That on or about the 25th day of September, 1925, the Independent School District of the City of Huron, Beadle

County, South Dakota, a Corporation, by and through its Board of Education, and officers thereof and therefor, and at a regular meeting of said Board passed the following resolution, viz., 'Whereas, two (2) members of the Board of Education of Huron Independent School District have but recently become members thereof, and,

" 'Whereas, the exact financial condition of the said School District is not known to its members, and it is necessary that the Board of Education of said School District know the condition relating to the funds of said district in the hands of the Treasurer thereof :

" 'Now, Therefore, Be It Resolved that the Treasurer of the Independent School District of the City of Huron, Beadle County, South Dakota, be required to turn over and surrender to said Board on October 5th, 1925, all moneys, credits and assets of every kind, nature and description that have come into his hands as such treasurer for the purpose of audit thereof. That a meeting of this said Board will be held at the office of the Sup't. of Schools in the High School Building, 5th and Illinois Ave., City of Huron, Beadle County, South Dakota, on the 5th day of October, A. D., 1925, at 8:00 o'clock P. M., when and where said Treasurer is required to present himself with said funds of said district for audit purposes.'

"That said resolution was regularly and duly adopted by said Board of Education of said School District.

"IX. That thereafter and on October 5th, 1925, pursuant to the resolution regularly and duly adopted as set out in paragraph VIII, hereof, the said H. M. Whisman, Treasurer as aforesaid, presented himself and then and there offered and tendered all items of cash and credits coming into his hands subsequent to the 28th day of January, 1924, or thereabouts, but offered and tendered in lieu of cash coming into his hands as such Treasurer from July 1st, 1923, to January 28th, 1924, or thereabouts, inclusive, Receiver receipts or vouchers of the First National Bank of Huron, South Dakota, a Corporation, as follows, viz., No. 1792, in the amount of $15,200.37; No. 1794, in the amount of $37,391.72; and, No. 1795 in the amount of $781.29. That said H. M. Whisman, Treasurer as aforesaid then and there wholly failed, refused and neglected and does now fail, refuse and neglect to turn over and surrender for

auditing purposes or any other purpose the cash moneys coming into his hands as such Treasurer.

"That the bond aforesaid was conditioned specifically for the return and payment of all moneys coming into the hands of said Treasurer H. M. Whisman, as such Treasurer, and by virtue of such failure to turn over said moneys to the qualified officers and agents of said District the said sureties of the said Treasurer became liable to said District upon their written obligation and bond to the extent of the moneys so refused to be returned to said district and its proper officers for auditing and other purposes, and said co-defendants of the said H. M. Whisman are now liable to said plaintiff in the sums and amounts so refused to be surrendered and turned over as aforesaid.

"That upon the refusal to turn over and surrender the moneys aforesaid the following resolution was duly and regularly passed and adopted by the Board of Education of said Huron Independent School District of the City of Huron, Beadle County, South Dakota, a corporation, viz.,

"Be It Resolved, That Whereas H. M. Whisman as Treasurer of the Independent School District of the City of Huron, Beadle County, South Dakota, pursuant to call and demand of this Board for a surrender and presentation of all funds in his hands as such Treasurer belonging to the aforesaid Huron Independent School District, has failed and refused to comply therewith and in lieu of presenting the funds mentioned the said H. M. Whisman as such Treasurer has presented to this Board receivers receipts numbers 1792, am't. $15,200.37; No. 1794, am't. $37,391.72; and No. 1795, am't. $781.29, of the First National Bank of Huron, South Dakota, a Corporation, now insolvent and suspended and in the hands of the Comptroller of the Currency of the United States of America for liquidation, and,

"Whereas, H. M. Whisman as such Treasurer has failed and refused to comply with the demands as made, except, by tender of the aforesaid receivers receipts, for the purpose of audit or any other purpose, and,

"Whereas, this said Board of Education of the Independent School District of the City of Huron, Beadle Co., So. Dak., a Corporation, by and through its officers has heretofore drawn and is-

sued warrants against its general funds in the hands of said H. M. Whisman, Treasurer as aforesaid, and

"Whereas, the said H. M. Whisman, Treasurer as aforesaid has failed and refused to pay such warrants to the extent of the general funds in his hands as such Treasurer and,

"Whereas, the said H. M. Whisman, as Treasurer of said District as aforesaid is in default under the terms and conditions of his bond as such Treasurer by virtue of the above and foregoing acts and omissions and by failure to turn over and surrender to this Board the moneys and credits coming into his hands as such Treasurer and by other acts of default:

"Now, Therefore, Be it resolved that the above and foregoing offer of said Receivers Receipts or certificates be and they are each and all hereby refused as and in lieu of the cash coming into the hands of said Treasurer, and which funds and moneys are represented thereby, and the said H. M. Whisman, Treasurer as aforesaid is hereby declared to be in default and liable, together with his sureties, under the terms and conditions of his bond as such Treasurer in force and effect at the time of the closing of the said First National Bank, a Corporation, and which said moneys so represented by the above mentioned certificates, were then and there in said banking Corporation and protected and secured by the said bond of said Treasurer H. M. Whisman.

"X. That demand for the surrender of the funds and moneys in the hands of said Treasurer H. M. Whisman, as represented by said receivers receipts, has been made but that said H. M. Whisman, has wholly failed, refused and neglected and does now wholly fail, refuse and neglect to produce the same, all to plaintiff's damage in the sum of Fifty-three Thousand Four Hundred Seventy-three and 38/100 ($53,473.38) Dollars, no part of which has been paid and all of which is past due and owing from the defendants to this plaintiff:

"Wherefore, Plaintiff demands judgment against the defendants in the sum of Fifty-three Thousand Four Hundred Seventy-three and 38/100 ($53,473.38) Dollars, together with interest thereon at 7% from January 28th, 1924, besides its costs and disbursements in this action."

To this complaint there was attached as Exhibit A, pursuant to paragraph III of the complaint, a copy of the bond involved.

The condition of the bond is as follows: "The conditions of the above obligation are such that if said H. M. Whisman, Treasurer as aforesaid of said Huron Independent School District, shall render a true account of all funds and property that shall come into his hands as such Treasurer and pay and deliver the same according to law, then this ‘obligation shall ‘be null and void, otherwise to remain in full force." And upon the back of the bond as shown by Exhibit A there was endorsed as follows: "H. M. Whisman, Treasurer's Bond and Oath Huron Independent ,School District No. ——— Beadle County, South Dakota.´ Approved this 26th day of September, 1923. By the Board of Education, A. A. Chamberlain, President. Filed this 26th day of Septembr, 1923. W. C. Peterson, ·Clerk of Board of Education. Filed in my office Dec. 26, 1923, A. J. Holbrook, Co. Auditor."

To this complaint defendants interposed a demurrer upon the following grounds:

"1. That the plaintiff has no legal capacity to sue.

"2. That there is a defect of parties plaintiff and defendant.

"3. That the complaint does not state facts sufficient to constitute a cause of action in favor of the plaintiff and against these defendants, or either of them."

The trial court duly made and entered its order sustaining said demurrer, from which order plaintiff has now appealed.

We will consider the grounds of demurrer in their numerical order as set out above. It is to be observed that the named party plaintiff in the title of the complaint is "Board of Education of the Independent School District of the City of Huron, Beadle County, South Dakota, a Corporation."

It is so apparent from the complaint as a whole that the district and not the board is meant to be the party plaintiff and meant to be described in paragraph numbered 1, of the complaint, that substantial justice might well require that the words "Board of Education" in the title be construed to constitute a mere misnomer, not subject to demurrer, but susceptible of being reached only by way of a plea in abatement. However, all the parties have treated the question of the title to this action as presenting a question relating to a demurrable defect, and we will therefore deal with it on that basis without deciding whether or not, as a matter

of law, such a question is necessarily presented. Looking at the matter from that viewpoint, it is manifest that the first ground of demurrer states a valid objection to the pleading.

Under section 7537, R. C. 1919, an independent school district possesses the usual powers of corporations for school purposes and can sue and be sued. There is no statute in this state making a board of education a corporate entity, and it is scarcely to be believed that any lawyer in this state would seriously maintain that a board of education is an entity distinct and apart from its component members or that a board of education as such could sue or be sued. Appellant's counsel do not so contend. Before the oral argument in this court, however, appellant, upon order to show cause, moved for leave to amend its complaint by striking out from that part of the title naming plaintiff and appellant the words "Board of Education of" and substituting for the next following word "the" the word "Huron," so that the party plaintiff and appellant named in the title would be "Huron Independent School District of the City of Huron, Beadle County, South Dakota, a Corporation." In support of this application there was submitted an affidavit by one of appellant's counsel in part as follows:

"W. C. Peterson, being duly sworn, on oath says that he is one of the attorneys for the plaintiff in the above entitled action. That he is also the Clerk of the Board of Education of the Independent School District of the City of Huron, Beadle County, South Dakota.

"That heretofore and during the year 1925, the Board of Education of Huron Independent School District, Huron, So. Dak., employed and retained affiant, together with T. H. Null of Huron, So. Dak., to institute the above entitled action to recover upon the Treasurer's bond, being the Treasurer of said Huron Independent School District of Huron, South Dakota. That T. H. Null in a conference between him and the affiant dictated the body of the complaint, nothing being said about the title of the action. That this affiant then proceeded to typewrite the complaint and entitled the action as above. Subsequently the defendants demurred to the complaint; that said demurrer came on for argument before the Circuit Court and that at said argument no mention was made in the argument or otherwise relative to the title to said action.

That the argument upon the demurrer was confined to the question as to whether the bond was liable for the money lost thru the deposit of the funds in a National Bank, that had not been designated as the depository. That the first suggestion that there was anything wrong with the title of the action was on page two (2) of the respondent's brief.

"That the error in entitling the action was due to inadvertence and mistake of Plaintiff's counsel."

The only counter showing was by affidavit of one of the attorneys who represented respondent in the court below, which affidavit was in part as follows:

"As such attorney affiant prepared the demurrer filed in the above entitled action when the same was in the Circuit Court in and for Beadle County, South Dakota, and affiant personally made the oral argument in support of said demurrer. That in the oral argument upon the issues of law made by said demurrer before the Circuit Court of Beadle County, all grounds stated in said demurrer were insisted upon in support thereof, and affiant especially remembers stating to the Court and to counsel appearing on behalf of plaintiff that while more time might be devoted to the argument upon certain issue because of the character thereof, than to other of said issues, that counsel for defendant did not waive any of said grounds of demurrer but insisted upon each and all of them, and that more time was given to the argument of some issues than to others, because certain of the issues were more simple and obvious.

"That affiant has just now examined the office file, which he had before him in making such oral argument and finds therein a memorandum of authorities, principally typewritten and partly in affiant's own handwriting, in which said memorandum affiant finds the outline of the argument and citation of authorities in support of the contention that the plaintiff has no legal capacity to sue and that there is a defect in parties plaintiff in said action."

This counter showing fails to state that the precise point, that the named party plaintiff was the board of education and not the school district was specifically, clearly, and definitely brought to the attention of court and counsel upon the argument on the demurrer in the court below. The error in naming the board of education as party plaintiff rather than the district is so palpable

that it is hardly to be believed that it could have been definitely brought to the attention of court and counsel upon the argument below without being promptly recognized, confessed, and remedied, as could easily have been done. It scarcely seems that any lawyer in this state would wittingly or intentionally describe a board of education as paragraph I of the complaint describes the plaintiff and appellant herein. Looking at the entire situation and the showings made, we are convinced that the naming of the board as plaintiff, rather than the district, was an inadvertent error on the part of appellant's counsel which was not realized until some time after this appeal was taken.

We are further of the view that, conceding this defect to have been reached by the first ground of demurrer, nevertheless the precise point involved could not have been specifically and definitely presented by respondent's counsel in the court below. The determination of substantial questions between parties litigant ought not to hinge, if it can be avoided, upon such inadvertent mistakes or omissions of counsel. We think the ends of justice require that the amendment asked by appellant be allowed, and it will be so ordered, and the amendment will be treated as made without the entry of formal order. The amendment having been made, the first ground of demurrer, of course, fails.

With reference to the second ground of demurrer, it is sufficient to say that it does not appear upon the face of this complaint that there is any defect of parties plaintiff or defendant, within the meaning of subdivision 4, §2348, R. C. 1919, nor did it so appear even prior to the allowance of the amendment. Mader v. Plano Mfg. Co., 17 S. D. 553, 97 N. W. 843; People v. Haggin, 57 Cal. 579; Dixon v. Cardozo, 106 Cal. 506, 39 P. 857.

We come now to the third ground of demurrer, failure to state facts sufficient to constitute a cause of action. This was of course good prior to the allowance of the amendment as to designation of the party plaintiff, if the error in title constituted anything more than a patent misnomer. This complaint never stated a cause of action against the defendants and in favor of the board of education, and it may well be doubted if it even purported so to do. As to this feature, what we said above in discussing the first ground of demurrer is likewise applicable, and, the amendment having been allowed, we turn to the question of whether the complaint states

facts sufficient to constitute a cause of action against the defendants and in favor of the school district.

■ ■ Respondent suggests that the complaint is fatally defective, in that it is not sufficiently alleged that the bond was approved or accepted by the board of education, and it is not alleged that the board required bond in the amount of this bond. Section 7565, R. C. 1919, so far as here applicable, reads as follows: "The treasurer shall execute a bond in such sum as the board may require, with sufficient sureties to be approved by the board, conditioned for the faithful discharge of his duties as treasurer of such district. The oath and bond of the clerk shall be filed with the treasurer. All other official oaths and bonds shall be filed with the clerk, except the bond of the treasurer, which shall be recorded at length by the clerk, and by him filed in the office of the county auditor of the county wherein such independent school district is situated."

In Edgemont, etc., District v. Wickstrom, 54 S. D. 547, 223 N.W. 948, we held that the provisions of this statute were for the benefit and protection of the school district. If the bond was executed and offered in a certain sum and was accepted and approved on behalf of the district by the board of education, which was the identical body authorized to fix the amount of the bond, such acceptance and approval is in itself a sufficient fixing of the amount, and it seems quite clear that the bondsmen cannot thereafter be heard successfully to deny liability on the theory that the bond is worthless because no bond at all need have been given until the board first fixed the amount of bond required. See, also, Lyman County v. Whitbeck, 54 S. D. 317, 223 N. W. 204.

With reference to the approval and filing of the bond, it is true that paragraph IV of the complaint states that the bond "was duly approved by A. A. Chamberlain, as Chairman of the Board of Education." It is also true that by statute the authority to approve the bond is vested in the board and not in the chairman thereof. However, a copy of the bond itself is attached to the complaint and made a part thereof as hereinbefore set out, and from the indorsement upon the bond it appears that it was approved on September 26, 1923, "By the Board of Education, A. A. Chamberlain, President." And it further appears that on the same day the bond was filed with the clerk of the board of education,

and subsequently, and on December 26, 1923, filed with the county auditor. In view of section 2363, R. C. 1919, providing that the allegations of a pleading shall be liberally construed with a view of substantial justice between the parties, we think, from the complaint as a whole, including the exhibit, a substantial compliance with all the relevant requirements of section 7565, R. C. 1919, is sufficiently pleaded.

■■ Assuming, as we have decided, that the complaint sufficiently alleges acceptance and approval of the bond involved, does it otherwise state a cause of action against the defendants? This is perhaps a misleading phrasing of the question. That the complaint in this case does state a cause of action against the defendants is elementary. To state a good cause of action against a public officer, who is custodian of public money, and his bondsmen, for loss of the money, it is only necessary to alleged the capacity of plaintiff, the qualification of the officer, the furnishing and acceptance of the bond and its conditions, the receipt of the money by the officer in his capacity as such at a proper time, demand for the money (if demand be necessary, which it usually is not), and failure to pay over or account. It is for defendant to plead and prove all items of discharge and bear the burden of explanation. 46 C. J. 1081, 1082; Lane, etc., District v. Endahl, 55 S. D. 73, 224 N. W. 951.

The real question here is whether or not appellant, in addition to pleading a good cause of action, has also pleaded a perfectly good defense thereto. The situation in this case moves us to reiterate the statement often found in the reports, that it is infinitely to be preferred that each party to an action permit the other party or parties thereto to do their own pleading. Generally speaking, it is usually much better for a pleader to content himself with pleading his prima facie case, or defense, whichever it may be, without more. The issues will be more definite, more clearly cut and precise, the burden of proof will be plain, and the case will be much easier of disposition and proceed in a more satisfactory fashion both in the trial court and upon appeal. To attempt in a complaint to embrace all the pleadings that may be desirable or requisite in a case, and to include therein, not only a complaint, but an answer by anticipation, and possibly a reply, is an entire perversion of the proper function of a plaintiff's initial pleading, and will generally result in difficulty and confusion.

 Appellant herein has pleaded a number of facts in addition to those necessary to establish a prima facie case against the defendants. If such additional facts do not constitute a defense, they should be disregarded and treated as surplusage and the complaint held good. Trotter v. M. R. F. Life Association, 9 S. D. 596, 70 N. W. 843, 62 Am. St. Rep. 887. But, if such additional facts constitute a defense, even prima facie, and the complaint does not contain other averments which avoid such defense, then the complaint is bad. Under our practice, a plaintiff need not reply to a defense set up in an answer unless a reply is required under section 2357, R. C. 1919. A complaint should state a prima facie cause of action. The answer (aside from matters of counterclaim, which are not here material, and are not considered or included in this discussion) should set up a defense by way of denial, or by way of new matter constituting a prima facie defense in the nature of confession and avoidance, or both. If the answer is denial only, the issues are thereby made. If the answer or any part of it is new matter, it is deemed controverted by the plaintiff "upon a direct denial or avoidance, as the case may require," without any reply or further pleading unless ordered. Section 2372, R. C. 1919. To an answer containing new matter sufficient to constitute a prima facie, or even an absolute, defense, a plaintiff therefore need not reply unless a reply is ordered pursuant to statute. His reply is interposed for him, whether denial or avoidance or both, by force of the statute. Nevertheless, if the complaint pleas facts which constitute even a prima facie defense, it must proceed further and avoid them, else it is bad, notwithstanding the fact that, if the same matters of defense had been set up in an answer, they would be deemed denied or avoided by the plaintiff by force of the statute without further pleading. The general rule is so stated in 21 R. C. L. p. 492, and 31 Cyc. p. 110, and appears to be without exception. It is so held, not only in states such as Indiana and New Mexico, where a reply is required (section 381, Burns' Ann. Ind. Stat., Revision of 1926; N. Mex. Stat., Codification of 1915, § 4119), but also in states such as Georgia and Texas, where the allegations of an answer are deemed controverted without reply (Park's Ann. Code Ga. 1914, §§ 5647 and 5651; article 1829, Rev. Civ. Stat. Tex. 1911, Acts 1913 Tex. p. 256, § 3, Acts 1915 Tex. c. 101, § 3).

See Western Union Tel. Co. v. Yopst, 118 Ind. 248, 20 N. E. 222, 3 L. R. A. 224; Bowlus v. Phenix Ins. Co., 133 Ind. 106, 32 N. E. 319, 20 L. R. A. 400; Continental Ins. Co. v. Bair, 65 Ind. App. 502, 114 N. E. 763, 116 N. E. 752; Jamison v. McMillen, 26 N. M. 231, 190 P. 726; Cedartown Cotton, etc., Co. v. Miles, 2 Ga. App. 79, 58 S. E. 289; Chance v. Commercial Credit Co., 30 Ga. App. 543, 118 S.E. 465; Reasoner v. Gulf, etc., Ry. Co. (Tex. Civ. App.) 152 S. W. 213. A complaint need contain nothing but a prima facie cause of action in favor of the plaintiff and against the defendant. It need not anticipate any defenses, but, if a plaintiff undertakes, by anticipating defenses, to make his complaint a vehicle for all the opposing contentions of all parties to the action, he must see to it that the complaint contains all of his own contentions, whether they relate to his prima facie cause of action (which is usually all his complaint ought to contain) · or to his avoidance of the anticipated prima facie defense which he has pleaded for the defendant.

Among the allegations in the complaint which are utterly unnecessary to state a prima facie cause of action in behalf of appellant are some which are urged as sufficient to constitute a defense. The allegations referred to are found in sections VI and IX of the complaint, and the substance of them is briefly as follows: That the money which is sought to be recovered from the defendant Whisman and his bondsmen in this action, as having been received by said Whisman as treasurer and not properly paid over and accounted for, was by the defendant Whisman deposited in the First National Bank of Huron, S. D., which bank had not been designated as a depository of such funds. That said bank closed on or about January 28, 1924, and then became and ever since has been insolvent. And that the said Whisman offered and tendered to the plaintiff district, in lieu of said cash, receiver's receipts or vouchers in an equivalent amount issued by said First National Bank of Huron, which tender was refused. The precise question facing us is this: Are the allegations last above mentioned sufficient to constitute a defense, either absolute or prima facie in this case, in which event the complaint is bad, or are they insufficient so to do, in which event they should be treated as mere surplusage and the complaint is good?

It has been and perhaps still is the weight of authority

that, in the absence of statute to the contrary or a specific provision for the designation of a depository and the placing of funds therein, a public officer who, by virtue of his office, is a custodian of public money, is an insurer thereof. Throop Public Officers, § 221 et seq.; Mechem Public Officers, § 297, et seq.; 22 R. C. L. pp. 468, 469; 46 C. J. p. 1039; note, 22 L. R. A. 449; note, 7 L. R. A. (N. S.) 1084; note, 36 L. R. A. (N. S.) 285; note, 18 A. L. R. 982; note, 59 A. L. R. 69. And that was long the rule in this state. Clay County v. Simonsen, 1 Dak. 387 (first edition paging 403), 46 N. W. 592; D. Rockbrain, etc., District v. Northern Casualty Co., 36 S. D. 392, 155 N. W. 10.

Since these decisions, however, the Legislature enacted chapter 335, Laws 1921, reading as follows:

"Section 1. That all funds of every kind and character, including moneys, credits or other assets, for the safety of which the treasurer of any county, municipality, township or school district is chargeable, shall be deposited in banks within the State of South Dakota, unless otherwise specifically provided by law.

"Section 2. All acts and parts of acts in conflict with this act are hereby repealed."

This statute first came before this court in the case of Edgerton, etc., District v. Volz, 50 S. D. 107, 208 N. W. 576. It has subsequently been before the court directly or indirectly in the following cases: Arey v. Stewart, 50 S. D. 101, 208 N. W. 576; City of Presho v. Dixon, 50 S. D. 106, 208 N. W. 581; Independent School District v. Fritcher, 50 S. D. 106, 208 N. W. 580; City of Parkston v. Kayser, 50 S. D. 129, 208 N. W. 580; City of Wessington Springs v. Fidelity & Deposit Co. of Maryland, 50 S. D. 133, 208 N. W. 580; Independent School District Lake Andes v. Scott, 51 S. D. 187, 212 N. W. 863; Onida Independent School District v. Groth, 53 S. D. 458, 221 N. W. 49; Roberts County v. Wickard, 53 S. D. 511, 221 N. W. 246; Perkins County v. Nelson, 53 S. D. 514, 221 N. W. 247; Perkins County v. Nelson, 53 S. D. 517, 221 N. W. 248; Independent School District of City of Brookings v. Flittie, 54 S. D. 526, 223 N. W. 728; City of Wessington Springs v. Smith, 54 S. D. 515, 223 N. W. 723; Edgemont Independent School District v. Wickstrom, 54 S. D. 547, 223 N. W. 948; Lane, etc., District v. Endahl, 55 S. D. 73, 224 N. W. 951.

In 1915 there came into our law, as section 8 of article 3 of chapter 102, Laws 1915 (subsequently becoming section 9013, R. C. 1919), a statute which provided, in substance, that no state bank which had complied with the provisions of the Bank Guaranty Fund Law should be required to give any further security or bond for the purpose of becoming a depositary for any public funds. This law continued in effect from 1915 until July 1, 1927, when it was repealed by chapter 54, Laws 1927.

In the light of the foregoing statutes and decisions, we regard at least the fo'lowing propositions as established in this state, since the effective date of chapter 335, Laws 1921, with reference to public officers, who in their official capacity are custodians of county, municipal, township or school funds. First, such custodian must deposit such funds in a bank within the state of South Dakota. Second, if some person or body other than such custodian is authorized by law to designate a depositary in which such funds are required to be kept, and has so designated a depositary, the custodian should there deposit the funds. Third, in such event, it is not the duty of the custodian to make investigation regarding the solvency of the depositary or to exercise deligence to keep himself informed in that particular, but he must nevertheless act in good faith in that connection, and cannot close his eyes to information which he may in fact have, even though there is no duty upon him to seek out such information. Fourth, if a depositary having been thus designated, the custodian, with no lack of good faith, deposits such funds therein and continues them therein, he is not liable for loss by reason of the failure of the depositary. Fifth, if the law has provided no one other than the custodian whose duty it is to designate a depositary, or if the person or board authorized to designate a depositary has not acted in that regard, then it becomes the duty of the custodian himself to select as a depositary for said funds some bank within the state of South Dakota; in other words, by chapter 335, Laws 1921, there is in effect added to the existing official duties of the custodian the duty of acting as a designating authority to select a depositary in cases where such authority is not placed elsewhere, or, if placed elsewhere, has not been exercised. Sixth, in performing this additional function thus cast upon his office, the custodian, as in other duties of his office, is obligated to act in good faith and with prudence; in particular he must exer-

cise good faith and due prudence in his investigations to inform himself as to the condition of the depositary he has in mind before he selects it for deposits therein,. and he must continue to exercise good faith and' due prudence to keep himself informed of its condition from time to time, so long as he has deposits therein. Seventh, if the custodian is not chargeable with lack of good faith or due prudence in the selection of a depositary or in continuing his deposits therein, he is not liable if a loss of funds results 'by failure of the depositary. Eighth, during the period that section 9013, R. C. 1919, was in force (i. e., from 1915 to July 1, 1927) it was not per se either lack of good faith or lack of due prudence for a custodian of funds, not otherwise guilty of bad faith or lack of prudence, to select as a depositary for such funds a state bank in South Dakota which had complied with the provisions of the Bank Guaranty Fund Law without requiring from such bank further or other security as a depositary; in this connection it is to be noted that the question of whether or not it would 'be per se lack of good faith or lack of due prudence or both for a custodian of public funds during the period 1915 to July 1, 1927, to select as a depositary therefor a national bank in the state of South Dakota without requiring from such 'bank a depositary bond or other security for the due forthcoming of the deposited funds, has not been directly presented to or decided by this court. All the cases before us involving chapter 335, Laws 1921, have dealt with state 'banks which had complied with the Guaranty Fund Law, excepting only the case of Onida School District v. Groth, 53 S.D. 458, 221 N. W. 49, which involved a national bank, but turned on the point that the custodian was affirmatively guilty of 'bad faith and lack of diligence, in that he was the managing officer of the depositary bank and had full knowledge of its insolvent condition, but nevertheless deposited the public funds therein and continued the deposit with such knowledge, whereby the funds were lost.

The question of burden of proof has not been presented to the court in any of these cases, save only in the latest thereof, being Lane Independent School District v. Endahl, 55 S. D. 73, 224 N.W. 951, 956. In that case we specifically refrained from deciding any question of burden of proof in cases where the custodian himself designates the depositary under chapter 335, Laws 1921, and we said as follows:

"Without further evidence, a part of the fact statement thus admitted is sufficient to establish, prima facie, the liability of the treasurer on his bond, while other facts, embraced in the stipulated statement, are sufficient to establish a defense in favor of the treasurer and his sureties to the cause of action. To establish, in the first instance, the liability of a school treasurer and his surety codefendants, under a bond executed and conditioned as in this case, it is incumbent upon the school district to merely prove the regular receipt of school funds by the officer and his failure to pay over or account for the same on lawful demand properly made. To successfully defend against a liability so established, prima facie, the treasurer has but to show a regular designation of a depositary of the particular funds, by the school board, his deposit therein of the funds, and the loss of the same through insolvency of the bank.

"The presumption of innocence and of regularity in the acts of public officers accompanies evidence of such a deposit in such a depositary, and the mere fact of loss, through insolvency of the depositary bank, is insufficient to overcome that presumption. But, in addition to the stipulated finding of the facts above stated, and wholly aside from strict proof of insolvency, to the competency of which appellant objects, the record shows that the treasurer at the time of deposit was apprised of the fact that the bank was in an unsound and failing condition; that its reserve was constantly and substantially below the requirement of law; that it had little cash available for current needs; and that it was and had been having serious and critical difficulties for a considerable time. In short, it is well and assuringly established that no prudent person apprised of the facts within the knowledge of the treasurer would have intrusted the funds in his care to this depositary. Independent School District v. Flittie, supra. When the treasurer of a school district, obligated by an official bond to honestly and faithfully discharge his duties as treasurer, and render a true account of all funds that shall come into his hands as such treasurer, and pay and deliver the same according to law, deposits the funds of the district in a bank by him known to be unsafe as a depositary, which bank, in a few months thereafter, suspends as insolvent, the treasurer and his sureties are liable on their undertaking for the loss, in like manner as if actual insolvency existed at the time of

deposit to the knowledge of the officer. The mere fact of regular designation of the bank as a depositary by the school board loses, by proof of such additional facts, its value as a defense.

"Although the foregoing admits of the prima facie adequacy of the defense of the school treasurer, against liability for loss of moneys in a failed bank, that the bank was regularly designated by the school board as a depositary of the funds—where nothing further appears to establish knowledge in the treasurer of the insolvency or failing condition of the bank at the time of deposit, or at times subsequent when the funds might have been withdrawn —nothing is here intended to affect the question, undecided, as to his liability for loss of funds in a bank selected by him, rather than by the board, as depositary, under the provisions of chapter 335, Laws 1921, as considered in Edgerton, etc., Dist. v. Volz, supra."

 Having now further considered of the point which was thus mentioned in Lane, etc., District v. Endahl, but was specifically exempted from the effect of that decision, we are of the opinion that the same rule with reference to burden of proof is applicable where the custodian himself must designate a depositary under chapter 335, Laws 1921, as is applicable where some one else is authorized to and does designate the depositary. By chapter 335, Laws 1921, the mandatory duty of designating a depositary is imposed upon the custodian where the law creates no other designating authority or where such other designating authority, if existing, has not acted. The performance of the duty of selecting a depositary under those circumstances thereby becomes just as much a part of the official duty required of the custodian as are any other of his duties. We think the same presumptions of regularity and good faith should attend him in the exercise thereof. We are therefore of the opinion that, since the effective date of chapter 335, Laws 1921, when a prima facie case is stated against a custodian of county, municipal, township, or school money for failure to pay over and account for the same, such custodian establishes a complete prima facie defense when he pleads and proves, without more, that he deposited said funds in a bank in the state of South Dakota in his name as treasurer or custodian, that the funds were lost by failure of the depositary, and that he has made proper tender of whatever indicia of such deposit he has received from said bank or the liquidating agency thereof.

Of course, as stated in Lane, etc., District v. Endahl, and definitely indicated in the other decisions hereinbefore referred to, the custodian establishes thereby a prima facie defense only. It is by no means absolute. The plaintiff is entitled to meet it by going fully into all the facts and circumstances surrounding the selection of the depositary by the custodian and the continuing of the deposit therein, including such matters as the general reputation of the depositary, the availability of other depositaries, the knowledge of the custodian, and his means for knowledge, of any matters which should put him on inquiry, etc. Plaintiff is entitled as against such prima facie defense to plead and prove any fact or facts showing or tending to show lack of good faith, diligence, or due prudence in selecting the depositary and continuing the deposit at any and all times from the selection to the failure. But the burden of pleading and proving these facts in avoidance of the prima facie defense, and of showing lack of good faith, diligence, or prudence on the part of the custodian is, we think, upon the plaintiff, although the pleading thereof will be taken care of under our practice by the statute (section 2372, R. C. 1919) unless a reply is required (section 2357, R. C. 1919) as hereinbefore pointed out.

We are therefore of the opinion that the complaint herein states a good cause of action against the defendants and also states facts sufficiently showing a prima facie, but not an absolute defense thereto, and fails to state anything in avoidance of that defense. The complaint is therefore bad. The complaint does not state whether or not the defendant Whisman, before depositing the funds in the national bank in question, required from said bank a depositary bond or other security for the forthcoming of the fund. No presumption of fact arises from the facts which are stated in the complaint as to whether said defendant did or did not require any such security or depositary bond. The record before us does not present, therefore, the question of whether or not the selection of a national bank as depositary for public funds by the custodian of the fund without requiring a depositary bond or other security is per se a badge of bad faith or a sufficient proof as a matter of law of lack of diligence or prudence. We therefore specifically refrain from determining that question. We may say, however, that it occurs to us that such failure to require security,

even if it be hereafter held as insufficient to establish, per se, fraud or negligence, might at least be taken into consideration in connection with such other facts and circumstances as might be made to appear in determining whether or not as a matter of fact the custodian acted in good faith and with due diligence and due prudence.

We are of the opinion that the order sustaining the demurrer should be affirmed. We do not know whether appellant contends that facts exist sufficient to avoid the prima facie defense stated in the complaint. If appellant believes that any such facts do exist, appellant ought not to be precluded by the determination of a mere question of pleading and burden of proof from its day in court on the merits. Evans v. Hughes County, 4 S. D. 33, 54 N. W. 1049. The order sustaining the demurrer is therefore affirmed, and the cause remanded, with leave to appellant, if it shall be so advised, to amend its complaint within sixty days after the remittitur is filed in the court below, upon payment of the costs of this appeal.

BROWN, P. J., and POLLEY, SHERWOOD, and BURCH, JJ., concur.