THUNDER HAWK SCHOOL DIST., Appellant, v. WESTERN SURETY CO., Respondent.

(235 N. W. 921.)

(File No. 7129. Opinion filed April 13, 1931.)

Charles G. Carrell, of Lemmon, and Jacobsen & Murray, of Mott, for Appellant.

Tom Kirby, of Sioux Falls, for Respondent.

CAMPBELL, J. One Mack was treasurer of plaintiff school district, and defendant surety company executed and delivered to plaintiff school district its bond in the penal sum of $9,000, conditioned, so far as material to this proceeding, as follows:

"The condition of the foregoing obligation is such, that whereas, the 'Principal' has been duly elected or appointed Treasurer in and for the Thunder Hawk School District No. 8, for the term beginning August 1, 1924, and ending July 14, 1927,

"Now, therefore, if the said 'Principal' shall, during the period beginning August 1, 1924, and ending July 14, 1927, well and faithfully discharge all the duties and trusts imposed upon him by reason of his election or appointment as said treasurer, except as hereinafter limited, and honestly account for all monies coming into his hands as said Treasurer, according to law, then this obligation shall be null and void; otherwise to be and remain in full force and virtue.

"This bond is executed by the 'Surety' upon the following express conditions, which shall be conditions precedent to the right of recovery hereunder: * * *

"Third, That the 'Surety' shall not be liable hereunder for the loss of any public monies or funds occurring through or resulting from the failure of, or default in payment by, any banks or depositories in which any public monies or funds have been deposited, or may be deposited by, or placed to the credit, or under the control, of the "Principal,' or for any public monies or funds heretofore or hereafter placed in any banks or depositories of which public monies and funds he is or may be the custodian by virtue of his office, whether or not such banks or depositories were or may be selected or designated by the 'Principal' or by other persons."

The treasurer, Mack, during his term of office was also president and managing officer of Farmers' State Bank of Thunder Hawk. The bank was closed and taken over for liquidation by the superintendent of banks on March 24, 1926, at which time Mack, as school treasurer, had on deposit therein school funds to the extent of $3,779.48. The bank had not been designated as a depositary by the electors of the school district pursuant to section 7461, R. C. 1919, and at the time Mack deposited said school funds therein the bank was in an extremely dangerous financial condition and in imminent danger of the insolvency which ultimately ensued, and Mack had full knowledge thereof. The situation was such that Mack, as school treasurer, is undoubtedly liable for the full amount of the deposit. See Murdo Twp. v. Townsend, 56 S. D. 576, 229 N.W. 935; Board of Education v. Whisman, 56 S. D. 472, 229

N. W. 522; Edgemont, etc., District v. Wickstrom, 54 S. D. 547, 223 N. W. 948; Ind. School District v. Flittie, 54 S. D. 526, 223 N. W. 728; Onida, etc., District v. Groth, 53 S. D. 458, 221 N. W. 49; Ind., etc., District v. Scott, 51 S. D. 187, 212 N. W. 863.

Plaintiff school district instituted this action against the surety company upon its bond to recover the full amount of said deposit, the personal liability of the treasurer therefor being admitted by all. The matter was tried to the court upon stipulated facts, and judgment was in favor of the defendant for the dismissal of the complaint upon the merits and for costs, from which judgment plaintiff has appealed.

The fact situation in all relevant particulars is parallel with that disclosed in the case of Murdo Township v. Townsend, 56 S.D. 576, 229 N. W. 935, above referred to, and the conditions of the bond herein involved are the same as those of the bond in the Murdo Township Case. In the Murdo Township Case this court held that the surety was not liable although the treasurer very clearly was. The judgment appealed from must be affirmed upon the authority of that case, unless there is some distinction between the two cases, or unless this court shall now hold that the decision in the Murdo Township Case was wrong and ought to be overruled.

Appellant points to the fact that the bonded officer in the Murdo Township Case was a township treasurer, while in the instant case he is a school district treasurer. Section 6098, R. C. 1919 (as amended by Laws 1925, c. 292), relating to the official bond of a township treasurer, provides in part as follows:

"Official Bond. Every person elected or appointed to the office of township treasurer, before he enters upon the duties of his office, shall give to the County a bond with one or more sureties or a surety bond to be paid for by the township to be approved by the board of county commissioners, in double the probable amount of money to be received by him, which amount shall be determined by such board, conditioned for the faithful performance of his duties as such treasurer."

Section 7461, R. C. 1919, relating to the bond of a school district treasurer, provides in part as follows:

"Bond of Treasurer. The school treasurer shall, on or before the second Tuesday in July following his election, and before en-

tering upon his duties, give a bond to the school district, conditioned that he will honestly and faithfully discharge his duties as treasurer; that he will render a true account of all funds and property that shall come into his hands, and pay and deliver the same according to law."

Appellant seeks to distinguish the cases by arguing that the statutory requirement for the official bond of the school district treasurer specifically requires that the bond be conditioned that the officer will render a true account of all funds and property that shall come into his hands and pay and deliver the same according to law; whereas, the statute does not require this condition in the official bond of a township treasurer. We can see no force in this argument. The statutory requirement with reference to the conditions in the bond of a school treasurer is perhaps more detailed and specific than the statutory requirement for the conditions in the bond of the township treasurer, but it is no broader. The official bond of the township treasurer is required to be conditioned "for the ·faithful performance of his duties as such treasurer." Language more inclusive could hardly be used. Certainly the faithful performance of the duties of a township treasurer requires that he will render a true account of all funds and property that shall come into his hands and that he will pay over and deliver the same according to law. The situation is in no manner strengthened by adding an affirmative recital to that effect, as was done with reference to the bond of the school treasurer.

 Under further provisions of section 6098, above referred to, the township treasurer is relieved from liability for loss by insolvency of a depositary bank if such depositary was selected by the electors of the township and he in good faith deposited therein. Under further provisions of section 7461, above referred to, the school district treasurer is relieved from liability upon the insolvency of a depositary if he in good faith deposited in a bank designated, either by the electors of the district, or by the district school board, under the circumstances provided by the statute. Also, since the effective date of chapter 335, Laws 1921, in the event no depositary is designated by the electors or the school board, it is the duty of the township treasurer or the school treasurer himself to select a depositary, and if he acts in good faith and with due prudence in selecting such depositary and maintaining his

deposit therein he is excused from loss by reason of the insolvency thereof. Edgerton, etc., District v. Volz, 50 S. D. 107, 208 N. W. 576; Board of Education v. Whisman, 56 S. D. 472, 229 N. W. 522, and cases therein cited. Except in the case of such lawful deposits, however, both the township treasurer and the school district treasurer are liable for funds coming into their hands in their official capacity and not lawfully disbursed, and it is entirely plain, both under section 6098 and under section 7461, that the law intends that the liability upon the official bond, as well of the township treasurer as of the school district treasurer, should be coextensive in this respect with the liability of the officer himself. The officer should not furnish and the approving body should not accept or approve an official bond, which, by its terms, purports to lessen or diminish the liability of the surety. In the instant case, however, and in the Murdo Township Case, the officer did tender, and the approving body did accept, receive, and approve (whether or not they were authorized so to do), a bond, which, by its express terms, specifically exempted the surety from some obligations for which the law contemplates that the official bond of the officer should be answerable. We held in the Murdo Township Case that the bond which was thus in fact offered, accepted, and received, must be construed and the obligation of the surety determined according to the definite, express, and unambiguous terms of the instrument.

Appellant urges that we erred in so holding, and advances the contention that where an official or statutory bond is required by law the obligation of the surety must be measured by the statute requiring the bond regardless of the terms of the instrument which the surety has executed, and that any condition in the instrument seeking to diminish the surety's obligation below the measure of obligation contemplated by the statute is void. This question was duly considered by this court in connection with the Murdo Township Case, although it was not specifically dealt with in the opinion, inasmuch as it had not been presented in the briefs or argument therein.

Admittedly, when a bond is executed and offered pursuant to a requirement of statute, it will be presumed that it is the intention of all parties that the obligation of the bond is to be commensurate with the requirement of the statute, neither more nor

less. This presumption may and should be availed of in construing the bond in case of any doubt or ambiguity. It is even possible that it may be availed of to supply omissions from the instrument when not inconsistent with other terms thereof. In the instant case and in the Murdo Township Case, however, there is no room for construction. There is neither doubt nor ambiguity. The language of the bond affirmatively exempts the surety from a certain peril for which the statute contemplated that the surety on the statutory bond should be answerable. The officer did not comply with the law when he tendered such a bond, nor did the approving body when they accepted it. Nevertheless, it was tendered and approved. There is here no room for presumption in any proper sense of the word. To "presume" that the surety intended its obligation to be coextensive with the contemplation of the statute would be flying squarely in the fact of the facts. The surety has very plainly, definitely, and positively said that it did not so intend. The situation then is one where the plain terms of the contract impose a limitation upon liability, which limitation the statute did not contemplate.

Under such circumstances, three possibilities arise:

First, it may be said that since the only justification for the furnishing of the bond is the statutory requirement that a bond shall be furnished, and since the bond does not comply with the terms of the statute requiring it, there has been a failure to meet the requirements of the statute and the bond is invalid and unenforceable. This was the technical rule of some of the earlier cases. To adopt this view gratuitiously relieves the surety from an obligation which it has in fact assumed for a consideration, although such obligation is less extensive than the statute contemplated and deprives the beneficiary of the bond from all recourse thereto.

Second, and conversely, it may be said that the surety, regardless of the terms of the undertaking, will be held to the full measure of liability contemplated by the statute without diminution or change. Such is appellant's contention in the instant case. This view imposes upon the surety a contract which it never in fact made and which perhaps it would have refused to make and amounts to contract by legislative or judicial fiat. This may properly lie within the legislative power as to subsequent bonds, but we think it ought not to be undertaken by the courts, although

apparently it has been so held in a few cases. See Western Casualty, etc., Co. v. Board of Commissioners, 60 Okl. 140, 159 P. 655, L. R. A. 1917B, 977; American Surety Co. v. State (Tex. Civ. App.) 277 S. W. 790. In most of the cases cited by appellant in support of his position, however, it will be found that the matter is determined by statute. Appellant cites U. S. F. & G. Co. v. Poetker, 180 Ind. 255, 102 N. E. 372, L. R. A. 1917B, 984; Duke v. Nat. Surety Co., 130 Wash. 276, 227 P. 2; City of Pocatello v. Fargo, 41 Idaho, 432, 242 P. 297; Philip Carey Co. v. Md. Casualty Co., 201 Iowa, 1063, 206 N. W. 808, 47 A. L. R. 495. In all these states the matter is governed by statute.

Burns' Ann. Ind. Stat. (Revision 1914) provides as follows:

"1278. (1235.) Defective bond.—852. No official bond entered into by any officer, nor any bond, recognizance, or written undertaking taken by any officer in the discharge of the duties of his office, shall be void for want of form or substance or recital or condition, nor the principal or surety be discharged; but the principal and surety shall be bound by such bond, recognizance, or written undertaking to the full extent contemplated by the law requiring the same, and the sureties to the amount specified in the bond or recognizance. In all actions on a defective bond, recognizance, or written undertaking, the plaintiff or relator may suggest the defect in his complaint, and recover to the same extent as if such bond, recognizance, or written undertaking were perfect in all respects."

Section 777, Remington's Comp. Stat. Washington 1922, provides as follows:

"§ 777. Bonds Not to Fail for Want of Form. No bond required by law, and intended as such bond, shall be void for want of form or substance, recital, or condition; nor shall the principal or surety on such account be discharged, but all the parties thereto shall be held and bound to the full extent contemplated by the law requiring the same, to the amount specified in such bond. In all actions on such defective bond, the plaintiff may state its legal effect in the same manner as though it were a perfect bond."

Section 433, Idaho Comp. Stat. 1919, provides:

"Whenever an official bond does not contain the substantial matter or conditions required by law, or there are any defects in the approval or filing thereof, it is not void so as to discharge

such officer and his sureties; but they are equitably bound to the state, or a party interested, and the state or such party may, by action in any court of competent jurisdiction, suggest the defect in the bond, approval or filing, and recover the proper and equitable demand or damages from such officer and the persons who intended to become, and were, included as sureties in such bond."

Section 612, Comp. Code of Iowa 1919, prescribes the conditions to be contained in official bonds, and section 614 provides as follows:

"No contract, stipulation, or condition limiting the liability created by said bond shall be of any force or validity."

■ The first view above outlined releases the surety from the obligation actually assumed and bars any possible recovery on the bond. The second view imposes upon the surety a contract which it never in fact made, and this, we think, should not be done, in the absence of statutory authority.

■ ■ The third possibility is to say that, under such circumstances, although the bond does not comply with the statute and although it need never have been accepted and approved because of lack of such compliance, nevertheless, having been accepted and approved, it will be treated in substance as a common-law obligation enforceable according to its terms, tenor, and effect, and not otherwise. Upon this view the bond will not be utterly rejected because of failure to comply with the statute. Neither will it be arbitrarily made to fit the statute in utter disregard of its express terms. This seems to us the common sense and reasonable view to take. It avoids judicial contract making and preserves to the beneficiaries such security as inheres in the bond according to its provisions. The statutes of this state seem to us to require the adoption of this position. Section 1500, R. C. 1919, provides:

"A surety cannot be held beyond the express terms of his contract, and if such contract prescribes a penalty for its breach he cannot in any case be liable for more than the penalty."

Section 7036, R. C. 1919, provides:

"The bonds and oaths of all civil officers shall be construed to cover duties. required by law subsequent to giving them; and no official bond shall be void for want of compliance with the statute, but it shall be valid in law for the matter contained therein."

That is the view indicated by this court in State v. Taylor, 10 S. D. 182, 72 N. W. 407, 66 Am. St. Rep. 707, and in Kingsbury County v. Andrews, 55 S. D. 133, 225 N. W. 216.

We adhere to the rule of the Murdo Township Case, and the judgment and order here appealed from are affirmed.

POLLEY, P. J., and ROBERTS and WARREN, JJ., concur.
RUDOLPH, J., not sitting.